## State of Vermont v. Ronald Matthew Bean

[762 A.2d 1259]

No. 96-642

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Jenkins, Supr. J., Specially Assigned**

Opinion Filed October 20, 2000

*Peter R. Neary*, Rutland County Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Associates*, Barre, for Defendant-Appellant.

**Dooley, J.** Defendant, Ronald Bean, appeals from a conviction for kidnapping and violation of an abuse prevention order, arising out of an incident on February 18, 1993 in which he restrained Judith Bean, his mother, in her home and threatened to kill her. He argues that the trial court erred in failing to find him incompetent to stand trial and to allow him to represent himself. We agree that in order to prevent assertion of an insanity defense defendant should have been able to represent himself. We reverse and remand.

To evaluate defendant's claims on appeal, we begin with a history of the lengthy proceedings below. On February 18, 1993, Rutland City Police arrested defendant for violation of an abuse prevention order protecting his mother. At the initial appearance on February 22, 1993, the State charged defendant with violation of the prevention order and kidnapping. Defendant indicated to the court that he wished to proceed pro se until he could consult with an out-of-state attorney, and then attempted to enter a guilty plea to both charges. The court refused to accept the pleas and assigned defendant a public defender until his competency to waive his right to counsel could be evaluated.

In the months after the initial appearance, defendant continued to insist that he be allowed to represent himself. He underwent several psychiatric evaluations. In a competency hearing in September 1993, the court found defendant competent to stand trial. The examining psychiatrist testified that defendant is "gamey" and has a "manipulative flair," making statements that he is Jesus Christ or God, for example, for shock value, and tries to manipulate the system in what he perceives to be his own interests. The psychiatrist also testified that defendant's failure to cooperate with defense counsel was due to his own calculated choice, and not the result of delusional thoughts or emotional disturbance. He explained that defendant did not want to use an insanity defense because he did not want to be in a mental hospital. He called this a calculated choice "not based on any problem in his thinking, delusional thoughts or a mood such as a depression."

In the course of the hearing, the psychiatrist requested that he be given access to defendant's past treatment files. Defendant interjected:

> I object to him receiving such information . . . . I don't want to be found insane. I don't want this man having that information that could possibly have me found insane. Your honor, I broke my neck to get out of a mental institution. I am not going to go through the chance of having that happen again. I'd rather be in jail, even it is for the rest of my life.

At the conclusion of the hearing the court ruled orally that defendant was competent. At that time defendant indicated that he wished to be represented by the court-appointed public defender after all, and the court granted that request.

In July 1994, the assigned public defender moved to withdraw as counsel citing "irreconcilable differences" between counsel and defendant. The motion was granted, and new counsel was assigned. The court also granted defendant's motion to suppress statements he made at the initial appearance, a motion filed by the original defense counsel. An interlocutory appeal of that ruling to this Court resulted in an affirmance of the suppression order, see *State v. Bean*, 163 Vt. 457, 658 A.2d 940 (1995), and a delay of almost a year in the trial court. During the period that the case was on review in the Supreme Court, new counsel attempted to withdraw at defendant's request, but the motion was denied.

In May 1995, counsel for defendant requested another competency hearing, against the wishes of his client. The court-appointed psychiatrist once again found defendant competent to stand trial and further testified the defendant was sane at the time of the offense. A psychologist testifying for the defendant claimed defendant was not competent to stand trial. The court found defendant to be competent. In its written opinion, the court relied on the opinion of the court-appointed psychiatrist that defendant overlays psychiatric symptomatology at will, without being in fact mentally ill. The court found that defendant uses psychiatric symptoms to obtain his own goals.

On November 20, 1995, defense counsel filed a notice pursuant to V.R.Cr.P. 12.1(a) that defendant may raise the defense of diminished capacity, the first formal notice of the use of a mental impairment defense. At a status conference before trial, defense counsel again raised the issue of defendant's competency. On the day before defendant's trial, the court ordered another competency evaluation. At that time, defendant's counsel told the court that defendant refused to assist him in preparation of the defense and had not talked to counsel about the offense in any manner. Further, counsel stated:

> I have concern about his competency at the time, or right now. He has also instructed me not to use an insanity defense which is in fact the defense in this case . . . . And he has expressed that if we were going to use an insanity defense, that he would want to proceed pro se, and that he would not need a lawyer.

He then formally gave notice "that this is an insanity defense case."

The hearing on defendant's competency was held the next day. The doctor appointed by the court testified that the defendant did not want to pursue the insanity defense and was displeased with his defense counsel, but that he felt he would be able to cooperate with defense counsel to the extent "required by the court." The court found, based on the doctor's conclusion, that defendant was competent to stand trial. In its written opinion, the court again found that although defendant was at times delusional, he was also intentionally obstructionist and uncooperative, and that the effects of his delusions did not rise to the level of impairing his capacity to understand the proceedings against him or assist in his own defense.

The trial proceeded, and during the second day, while defense counsel was cross-examining a witness, defendant tried to interrupt this questioning when it became obvious defense counsel was still pursuing the insanity defense. The court would not allow this interruption. The following day, after the State rested, defendant made a motion to proceed pro se claiming that his lawyer had not represented his interests. When the court denied that motion, defendant asked to be excused from the courtroom and did not return during the duration of the trial. Arrangements were made to place defendant in a room outside the courtroom with a closed circuit television to observe the proceedings. Apparently, he did not watch the television set.

■ Defendant first argues that the record shows that he was incompetent to stand trial as a matter of law, and the trial court erred in not concluding so. We agree that a defendant incompetent to stand trial may not be tried. See 13 V.S.A. § 4817(a); *Godinez v. Moran*, 509 U.S. 389, 396-98 (1993). In order to be found competent to stand trial, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). Our statutes provide extensive procedures governing the determination of competency to stand trial. Defendant does not contest the procedural regularity of the competency determinations in this case. Instead, he argues that despite the mental health evaluations that found him competent, his conduct was so bizarre that it showed him to be incompetent.

His argument is based largely on *State v. Pollard*, 163 Vt. 199, 205-06, 657 A.2d 185, 189-90 (1995), in which we found a determination that defendant was competent to be erroneous even though it was

supported by the opinion of the examining physician that defendant had a factual understanding of the charges and of the trial functions of the court and its officers. We held that defendant's garbled manner of speech, his refusal to take his lawyers' advice, and his bizarre behavior precluded a finding that he had sufficient ability to consult with his lawyer with a reasonable degree of rational understanding. *Id.* at 206, 657 A.2d at 190.

In evaluating defendant's argument, we stress that it is the trial court's responsibility, in the first instance, to evaluate the evidence and to determine whether defendant's competency meets the constitutional standard. See 13 V.S.A. § 4817(b). If the court's findings are supported by credible evidence and not clearly errone-ous, they must be upheld. See *State v. Thompson*, 162 Vt. 532, 535, 650 A.2d 139, 141 (1994). In reaching its conclusion, the court may consider its observations of the demeanor of the defendant. See *id.*

In this case, there was evidence to support the court's finding that, despite defendant's bizarre behavior, he was competent to stand trial. Defendant was evaluated several times by various physicians. Unlike the evidence in *Pollard*, the physicians testified that defendant had a rational, rather than merely a factual, understanding of the proceedings against him. More important, the mental health evidence suggested how to reconcile defendant's apparent bizarre behavior with a conclusion defendant was competent. The psychiatrist who performed evaluations on defendant in March 1993, March 1995 and July 1995 found that defendant "preferred to drift into irrelevant, personal or intrusive issues at times." The doctor also found that defendant was "not delusional although he wished to appear that way," and that he "appeared interested in entertaining himself through the interview." He testified that defendant used psychiatric symptomatology to manipulate the system.

A psychologist who testified for the defense found that defendant understood the roles of the participants in the legal process; however, the psychologist had concern over defendant's ability to cooperate with counsel. Other evaluators found that defendant was able to cooperate with counsel, but might choose not to when he felt it was in his own interest.

In the 1995 competency determination, the court relied on the opinion of the psychiatrist appointed to conduct the competency evaluation. The court found that defendant used "flamboyant symp-toms" to obtain his own goals and such symptoms were not the result

of mental disease or defect. It concluded that defendant's failure to cooperate with counsel was the result of a volitional choice. The 1996 competency determination is similar although based on the opinion of a different psychiatrist.

After a careful review of the record, we conclude that this case is much more like *State v. Thompson* and *State v. Davis*, 165 Vt. 240, 248, 683 A.2d 1, 6 (1996), two cases in which we upheld a trial court's finding of competency, than like *Pollard*. We conclude that the trial court's determinations of competency are supported by its findings in each case, and its findings are supported by the evidence. There is no error in the competency determinations.

Defendant's second claim of error is that the court should have granted his motion to dismiss his counsel and to proceed representing himself. The motion at issue came after the close of the State's case and before defense counsel presented his witnesses in support of the insanity defense. Defendant claims that the motion was made to prevent counsel from putting on an insanity defense. Although defendant did not explicitly state this reason for his motion, the record overall supports defendant's claim that counsel's pursuit of the insanity defense, and his refusal to present other defense theories defendant supported, was the reason defendant asserted "I'm not being represented" and sought to proceed pro se.[1]

---

[1] The dissent argues that because defendant never stated that he was dissatisfied with the use of the insanity defense, and he challenged what his counsel failed to do rather than what he did, we cannot conclude that his desire to represent himself was caused by the pursuit of the insanity defense and must affirm since defense counsel was competent and entitled to control cross-examination of the victim witness. This view of the events is inconsistent with what actually occurred.

First, as we stressed in the statement of facts, defense counsel informed the court at the beginning of trial that defendant opposed the use of the insanity defense and would seek to proceed pro se if defense counsel tried to use the defense. Defense counsel said: "He also has instructed me not to use an insanity defense, which in fact is the defense in this case." He then gave formal notice of the reliance on the insanity defense. Thus, the court was on notice of the irreconcilable breakdown in the attorney-client relationship and defendant's position in response to this breakdown.

Second, defendant's position was reinforced when defense counsel started his examination of the victim. Out of the hearing of the jury and defendant, defense counsel reiterated that defendant did not want him to use the insanity defense, but wanted him instead to pursue cross-examination that was inconsistent with his defense theory and "not consistent with his best interests at trial which I think are within the purview of my decision-making as an attorney." Defense counsel indicated he feared for his safety because defendant threatened to attack him if he did not conduct the cross-examination as directed.

Third, defense counsel did not try to impeach the victim through cross-examination as the dissent suggests. If believed, the victim's version of the events easily established

■ A criminal defendant has a constitutional right of self-representation. See *Faretta v. California*, 422 U.S. 806, 819 (1975); *State v. Ahearn*, 137 Vt. 253, 260, 403 A.2d 696, 701 (1979). The right, however, must be invoked in a timely fashion. See, e.g., *United States v. Noah*, 130 F.3d 490, 497 (1st Cir. 1997). Although the United States Supreme Court has not spoken on the question, most courts have held that the right to self-representation must be invoked before trial to be considered timely per se. See *Lyons v. State*, 796 P.2d 210, 214 (Nev. 1990); *State v. Fritz*, 585 P.2d 173, 178 (Wash. Ct. App. 1978). If invoked thereafter, the trial court has discretion on whether to allow self-representation. See *State v. Fuller*, 523 S.E.2d 168, 170 (S.C. 1999). We have signaled that we will follow this approach by holding that once a defendant appears pro se, the trial court has discretion to decide whether to honor a request for appointment of counsel if it occurs during trial. See *State v. Wool*, 162 Vt. 342, 351, 648 A.2d 655, 661 (1994).

■ In the leading case of *People v. Windham*, 560 P.2d 1187 (Cal. 1977), the California Supreme Court outlined a nonexclusive list of factors for trial courts to consider in deciding whether to allow a motion to dismiss counsel and proceed pro se made during trial. The court stated:

> When such a midtrial request for self-representation is presented the trial court shall inquire sua sponte into the

---

the elements of the crimes with which defendant was charged. Defense counsel's examination of the victim did not try to dispute or undermine any of the testimony she gave on direct examination. The entire examination of the victim was geared to show defendant's psychiatric history and the bizarre nature of his conduct before and during the alleged offense, obviously to support defense counsel's claim that defendant was insane during its commission. The dispute that occurred between lawyer and client during the victim's testimony was not over how to cross-examine the victim, a matter within the control of the lawyer; it was first and foremost over whether to cross-examine her at all.

Fourth, defendant began during the cross-examination of the victim to object to his own counsel's questions. The court then stopped the proceedings and talked with the lawyers at the bench. Defense counsel explained: "I guess this is an ongoing thing of him not wanting me to use this defense." The court indicated to defense counsel: "That's okay. Do what you need to do."

We emphasize these facts from the record to show that defense counsel kept telling the court there was an irreconcilable difference on the use of the insanity defense, that defense counsel intended to rely on the insanity defense, and that defendant wanted him fired if he used that defense. Defendant simply acted as defense counsel described he would on at least three occasions. The conclusion is inescapable the defendant tried to fire defense counsel because of his use of the insanity defense and not because of differences over how to conduct the cross-examination of the victim.

specific factors underlying the request thereby ensuring a meaningful record in the event that appellate review is later required. Among other factors to be considered by the court in assessing such requests made after the commencement of trial are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion. Having established a record based on such relevant considerations, the court should then exercise its discretion and rule on the defendant's request.

*Id.* at 1191-92; see also *State v. Brown*, 676 A.2d 513, 525 (Md. 1996) (similar list of factors). Although we stress that the relevant factors may vary from case to case, we adopt the approach of the California court for use by the trial courts in the first instance and this Court on appeal.

In this case the interchange between defendant and the court, representing the motion and ruling, was very perfunctory, as follows:

DEFENDANT: I need to say something. I understand it is my right to defend myself as a defendant. I do have something I need to say.

COURT: I am going to deny the request, Mr. Bean. I'm sorry.

DEFENDANT: Your honor, I am again denied the ability to defend myself as a United States citizen. You're denying me my rights according to the Constitution of the United States of America. I was not able to question the witnesses. My competency has been in question right from the very beginning. My lawyer would not bring up questions of competency of the witnesses. In fact, my [original defense lawyer's] prime concern was the witness's competency. No question of her competency has been brought up. I don't believe my attorney is handling my case with reliability of counsel. I'm not being represented.

COURT: Anything you want to add?

DEFENDANT: I've felt that way from the very beginning; I'm not being represented.

. . . .

DEFENDANT: Your honor, I'm not being represented. Then I am going pro se and represent myself.

COURT: I'm going to deny that motion, too.

Consistent with the approach in *Windham*, we would normally be concerned whether the brief interchange made a sufficient record to show that the court used its discretion and evaluated the relevant factors. Here, an examination of the entire record shows that defendant's dissatisfaction with counsel was so dominated by his objection to the use of the insanity defense that this single factor overwhelms all others.[2] Thus, we must first address whether defense counsel had the right to try the case exclusively on an insanity defense theory over defendant's objection. The answer to this issue will, in turn, determine our evaluation of how the court responded to defendant's motion to represent himself.

Our precedents have not directly answered whether the decision to pursue an insanity defense ultimately rests with defendant or defendant's counsel. In broad terms, the issue is whether the decision to raise an insanity defense is one involving the objectives of representation, left to the client, or the means of representation, properly exercised by the lawyer. See Vermont Rules of Prof. Conduct 1.2(a). We must also consider this issue in light of defendant's right of self-representation.

Although we have not addressed the issue directly, two decisions foreshadow our decision. The first is *State v. Davignon*, 152 Vt. 209, 565 A.2d 1301 (1989), a case in which defense counsel first gave notice of the use of an insanity defense, and then withdrew it in favor of a defense of diminished capacity. Defendant argued on appeal that in order that there be an effective waiver of an insanity defense, the record must show that the decision was made voluntarily and intelligently *by the defendant*. Although we did not ground our decision on whether the defendant should control the decision to rely on an insanity defense, our discussion of the issue assumed this to be true. As one reason for the decision, for example, we held that in the absence of record evidence of disagreement between the lawyer and

---

[2]The circumstances in this case are virtually identical to those that arose in *United States v. Kaczynski*, the unabomber case. See generally J. Newman, *Doctors, Lawyers, and the Unabomber*, 60 Mont. L. Rev. 67 (1999).

client, defendant's remedy, if any, lay in bringing a post-conviction relief proceeding alleging ineffective assistance of counsel. We noted:

> Here, defendant had experienced trial counsel, and there is nothing to suggest that counsel was acting against the wishes of his client. It may be that further facts would establish that trial counsel's representation was inadequate because of a failure to raise and pursue an insanity defense.

*Id.* at 221-22, 565 A.2d at 1308.

The second is *In re Trombly*, 160 Vt. 215, 627 A.2d 855 (1993), in which after he was convicted of attempted murder, petitioner sought post-conviction relief because his counsel insisted, at his request, that the court not charge the lesser-included offense of manslaughter. Relying upon the American Bar Association Standards for Criminal Justice, and their commentary, we held that "trial tactics . . . that directly relate to the crime upon which the jury may rest its verdict generally are within the defendant's decisional control." *Id.* at 218, 627 A.2d at 857. We held that the defendant had the right to control whether an instruction on a lesser-included offense should be pursued, and that defense counsel was not ineffective for following his client's direction. See *id.* at 219-20, 627 A.2d at 857.

Although the ABA Standards do not address the issue before us explicitly, their rationale supports control of the decision to raise an insanity defense by defendant, rather than defense counsel. The Standards specify that the decision of "what plea to enter" must be made by the "accused after full consultation with counsel." 1 American Bar Ass'n Standards for Criminal Justice § 4-5.2(a)(i) (2d ed. 1980). Unlike many states, we do not require that a criminal defendant enter a special plea of not guilty by reason of insanity. See *State v. Lapham*, 135 Vt. 393, 397, 377 A.2d 249, 251 (1977). This is a matter of form over substance because our criminal procedure has most of the features of a formal plea.

Insanity is an affirmative defense. 13 V.S.A. § 4801(b). A defendant raising an insanity defense must give notice thereof on the date of the status conference, or ten days prior to trial, whichever is sooner. V.R.Cr.P. 12.1(a). The defendant must provide with the notice the names and addresses of the witnesses the defendant will call in support of the insanity defense. See *id.* 12.1(b). If the jury acquits because it found defendant insane at the time of the offense, it must state this ground in its verdict. See 13 V.S.A. § 4819. A person acquitted by the jury based on a finding of insanity automatically faces a mental health commitment hearing. See *id.* § 4820(4).

Under this procedure, notice of use of an insanity defense is essentially a plea of not guilty by reason of insanity. As the ABA Standards reflect, such a plea should be made by defendant, or by defendant's counsel only with defendant's consent.

There are additional reasons why we should allot the power to decide whether to defend on insanity to defendant, rather than defendant's counsel. Under the above procedures, an acquittal on insanity will often lead to mental health commitment and institutionalization. Defendant in this case was aware of that consequence and, based on his personal experience, stated he would rather be in prison than in a secure mental institution. This is a choice that only defendant can make.

We are also not unmindful of the stigma that an adjudication of mental illness entails. See *In re M.D.*, 163 Vt. 130, 134, 655 A.2d 723, 725 (1994) (negative social consequences); *State v. Condrick*, 144 Vt. 362, 364, 477 A.2d 632, 633 (1984) (legal disabilities as well as social stigmatization). A criminal defendant may conclude that the stigma from a criminal conviction has less long-term effect than the stigma of an involuntary commitment.

Finally, we note that an insanity defense may be so inconsistent with a defense on the merits of defendant's conduct as to make the latter impossible. See generally A. Singer, *The Imposition of the Insanity Defense on an Unwilling Defendant*, 41 Ohio St. L.J. 637, 637-39 (1980); Note, *The Right and Responsibility of a Court to Impose the Insanity Defense Over the Defendant's Objection*, 65 Minn. L. Rev. 927, 944-46 (1981). In this case, initial defense counsel began preparing a defense that appeared to be based on the unreliability of the testimony of the victim. Trial defense counsel wholly abandoned that defense, relying exclusively on the insanity defense.

■ With only a few exceptions, the vast majority of courts which have considered the question have held that the decision whether to raise an insanity defense lies with the defendant, as opposed to the defendant's lawyer. See *United States v. Marble*, 940 F.2d 1543, 1546-47 (D.C. Cir. 1991); *Foster v. Strickland*, 707 F.2d 1339, 1343 & n.3 (11th Cir. 1983); *People v. Frierson*, 705 P.2d 396, 401-05 (Cal. 1985); *Jacobs v. Commonwealth*, 870 S.W.2d 412, 418 (Ky. 1994); *Treece v. State*, 547 A.2d 1054, 1062 (Md. 1988); *Commonwealth v. Simpson*, 689 N.E.2d 824, 831 (Mass. App. Ct. 1998), *rev'd on other grounds*, 704 N.E.2d 1131 (Mass. 1999); *People v. Morton*, 570 N.Y.S.2d 846, 849 (App. Div. 1991); *State v. Tenace*, 700 N.E.2d 899,

908 (Ohio Ct. App. 1997); *State v. Felton*, 329 N.W.2d 161, 174 (Wis. 1983). These decisions generally rely on one or more of the considerations we have outlined above. We join these courts and hold that the decision whether to assert an insanity defense lies with defendant, and not defense counsel. Under this rule, it was improper for defense counsel to assert an insanity defense over defendant's objection in this case.

In announcing this holding, we also emphasize what we are not deciding. We are not deciding whether the trial court may direct the presentation of an insanity defense over defendant's objection. On this question, the courts from other jurisdictions are more evenly divided. Compare *United States v. Wright*, 627 F.2d 1300 (D.C. Cir. 1980), with *Frendak v. United States*, 408 A.2d 364 (D.C. Ct. App. 1979); cf. *In re Trombly*, 160 Vt. at 219, 627 A.2d at 857 (even though defendant controls the decision whether to request a lesser-included-offense instruction, court may override defendant's refusal of such an instruction if it "is so ill-advised that it undermines a fair trial"); see generally D. Cohn, *Offensive Use of the Insanity Defense: Imposing the Insanity Defense Over the Defendant's Objection*, 15 Hastings Const. L.Q. 295 (1988). In any event, none of the judges who presided in this case considered the merits of whether an insanity defense should have been presented, although they honored defense counsel's choice in the face of defendant's objection. We do not believe this case raises the scope of the court's power.

Further, we are not deciding whether a higher standard of competency must be met before a defendant, found competent to stand trial, can knowingly and intelligently waive an insanity defense. See, e.g., *Frendak*, 408 A.2d at 378 (court must determine that "defendant is capable of intelligently refusing to make the defense"); *Jacobs*, 870 S.W.2d at 418 (even if a defendant is found competent to stand trial, "he may not be capable of making an intelligent decision about his defense"); cf. *State v. Ahearn*, 137 Vt. at 261, 403 A.2d at 702 (in view of defendant's experience and skill, Court does not reach whether the standard of mental competency to waive counsel is the same as that to stand trial). Defendant consistently presented a rational reason for rejecting an insanity defense. Again, the trial court did not explore this question. At one point early in the proceeding, when defendant was seeking to represent himself, the court took testimony on whether defendant was competent to conduct his defense. Before the court could rule, however, defendant indicated he was satisfied with initial defense counsel and effectively withdrew his self-representa-

tion request. As a result, the court never examined defendant's competency, except in ruling on his competency to stand trial. As described above, defendant's motion to remove trial counsel was denied summarily with no examination of his competency to represent himself.

However we view the forced imposition of the insanity defense in this case, we must conclude that the conviction cannot stand. Unlike *Davignon,* where we could not determine from the record whether the insanity defense was waived by counsel without defendant's consent, here the record of disagreement was clear. In such a case, the forced imposition of the insanity defense over defendant's objection is grounds for reversal of the conviction. See *Jacobs,* 870 S.W.2d at 418; *Treece,* 547 A.2d at 1063; *State v. Jones,* 664 P.2d 1216, 1223 (Wash. 1983).

As we began this analysis, we must also judge the court's decision not to allow defendant to represent himself. In applying the *Windham* factors, the controlling factors must be the quality of trial counsel's representation and the reason for the request. We accord the trial court broad discretion in evaluating the relevant factors. That discretion is not, however, unlimited. See *State v. Brown,* 676 A.2d at 525.

Although the formal motion came late in the proceeding, the trial court knew that the insanity defense was being forced on defendant and defendant objected to the use of this defense. On the day before trial, defense counsel explained the situation and that defendant would want to proceed pro se. This information was consistent with defendant's position throughout the case. Rather than acting at that point, the court waited until the situation came to a head during the trial.

We cannot fault defendant for the lateness of his attempt at self-representation. He consistently stated his position, and when he observed that he was being represented improperly, he acted to prevent the improper representation. Moreover, the court did not at that point explore the other factors which would bear on whether defendant's request to proceed pro se should have been honored. For example, we have no record to determine what delay would have been caused by discharge of counsel or its effect on defendant's ability to present a defense.

We hold that under the *Windham* factors, the trial court should have granted defendant's motion to proceed pro se, in the

absence of any other method of resolving the conflict between lawyer and client, and, in any event, did not make an adequate record showing analysis of the relevant factors. See *id.* (court "must conduct an inquiry to assess whether the defendant's reason for dismissal of counsel justifies any resulting disruption"). The failure of the court to honor defendant's right of self-representation is also grounds for reversal.

We cannot evaluate on this record whether other credible defenses existed and might have been as effective as the insanity defense presented by counsel, nor can we evaluate what would have happened if defendant had represented himself. The errors here are "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991). Accordingly, we must reverse defendant's conviction and remand for a new trial.

*Reversed and remanded.*

**Morse, J.,** concurring and dissenting. I concur in the Court's decision that the trial court's finding of competency was supported by the evidence and findings. I disagree with its conclusion that the court erred in denying defendant's motion to represent himself. The record amply demonstrates that the court acted within its discretion in denying the motion. Accordingly, I would affirm the judgment in its entirety.

An understanding of the self-representation issue requires a brief synopsis of the lengthy pretrial proceedings. Some of them were summarized in an earlier opinion arising out of the same case, *State v. Bean*, 163 Vt. 457, 658 A.2d 940 (1995). Defendant was arrested in February 1993 for violating an abuse prevention order protecting his mother. At his initial court appearance, defendant indicated that he would like to represent himself "[f]or now," but also indicated that he was seeking access to "my proper counsel," allegedly an out-of-state attorney. *Id.* at 459, 658 A.2d at 942. At his arraignment several days later, defendant expressed an interest in proceeding pro se, but again alluded to out-of-state counsel and indicated that he wanted to hold open the option of obtaining an attorney. The court subsequently appointed a public defender until defendant's competency to stand trial could be determined.

At the conclusion of a hearing in June 1993, defendant moved to proceed pro se. At a hearing on the motion several weeks later, defendant explained that he was not comfortable with the assigned

public defender, expressed an interest in standby counsel, and suggested a specific law firm. The court kept the public-defender assignment, however, pending further proceedings. In the meantime, defendant's appointed counsel moved forward with discovery of medical records of defendant's mother, who had been evaluated for competency and sanity in connection with unrelated criminal charges, and also moved to suppress several incriminating statements made by defendant at arraignment.

At the conclusion of defendant's competency hearing in September 1994, the court ruled that defendant was competent to stand trial. Defendant thereupon asserted that he was entitled to representation by counsel of his choice, indicated that he wished to be represented by the assigned public defender, but cautioned that he also wished to preserve for the future his choice of representation. Expressing dissatisfaction with delays resulting from the State's appeal of the court's order granting defendant's motion to suppress, defendant moved, in July 1994, to remove the assigned public defender, indicating that he had been in contact with an unidentified private attorney. In August 1994, the court ordered a substitution of counsel, assigning a new attorney to the case, who remained defendant's counsel of record through the remainder of the proceedings.

New counsel again raised the issue of defendant's competence to stand trial, and a second competency hearing was held in August 1995. The court again found that defendant was competent to stand trial, which was set to commence in February 1996. Just before trial, however, counsel again questioned defendant's competence, and another competency hearing was scheduled just prior to jury selection. The evaluating psychiatrist testified that although defendant met the criteria for a diagnosis of schizophrenia paranoid type, and demonstrated "unusually obstructionist" behavior toward the trial proceedings, he was nevertheless competent to stand trial. The trial court again ruled that defendant was competent.

The State's first witness was defendant's mother. Before she took the stand, defendant indicated that he did not wish to be in the courtroom. At the conclusion of the mother's direct testimony, defense counsel informed the court that defendant wished to return to the courtroom to be present for counsel's cross-examination. Counsel also stated for the record that defendant had "demanded that I do certain things during cross-examination that are not consistent with the trial strategy that I have, and in my view [are] not consistent with his best interests at trial which I think are within the purview of

my decision making as an attorney." During counsel's cross-examination of the mother, defendant sought unsuccessfully to speak with counsel several times, called out counsel's name after each question and answer in an apparent attempt to attract his attention, and asked the court to allow him to cross-examine the witness, which the court denied. Defendant continued to interrupt the questioning during the State's redirect.

After calling two more witnesses, the State rested. Before the defense could proceed, defendant informed the court that he was "still having trouble with assisting my counsel in my defense. He won't . . . . allow me to assist him in the defense." The court inquired of defense counsel whether there was anything he wanted to add. Counsel indicated there was nothing. Defendant then asserted that it was his right to defend himself. Interpreting the statement as a motion to proceed pro se, the court denied the request. Defendant then argued that he was being denied his constitutional right and ability to defend himself, stating:

> I was not able to question the witnesses. My competency has been in question right from the very beginning. My lawyer would not bring up questions of competency of the witness. In fact, my — Patricia Lancaster's [the first assigned public defender] prime concern was the witness's competency. No question of her competency has been brought up. I don't believe my attorney is handling my case with [the] reliability of counsel. I'm not being represented.

At the conclusion of defendant's statement, the court inquired whether there was anything he wished to add. Defendant responded: "I've felt that way from the very beginning; I'm not being represented." The court inquired of counsel whether there was anything he wanted to add. Counsel indicated there was nothing. The court then denied the request. Defendant thereupon asked to be excused from the courtroom and did not return for the duration of the trial.

Defendant now contends the trial court erred in denying his request to represent himself. The Court agrees, reasoning that "[a]lthough defendant did not explicitly state this reason for his motion . . . counsel's pursuit of the insanity defense, and his refusal to present other defense theories defendant supported, was the reason defendant asserted 'I'm not being represented' and sought to proceed pro se." 171 Vt. at 296, 762 A.2d at 1263. This conclusion provides the springboard for the Court's extended discussion of the

question of who controls the decision to pursue an insanity defense, and its ultimate conclusion that because defendant had the right to control that issue, the self-representation motion was wrongfully denied.

The flaw in the Court's reasoning, in my view, is its assumption that defendant's motion was premised upon counsel's decision to pursue an insanity defense. Yet the Court acknowledges that defendant did not bring the motion on this basis. Rather, the motion was grounded expressly upon counsel's failure, in defendant's view, to adequately impeach the complainant's (defendant's mother) competency, and his refusal to allow him to participate in the cross-examination of the witness. The essence of the motion, as defendant explained it, was that counsel would not "allow me to assist in the defense . . . my lawyer would not bring up questions of competency of the witness." Defendant compared defense counsel's conduct to that of his former public defender, who, he asserted, had made the mother's competency a "prime concern."

The events preceding the motion provide the context for defendant's action. Immediately before the witness's testimony, defense counsel expressly warned the court that defendant had "demanded that I do certain things during cross-examination [of the mother] that are not consistent with the trial strategy that I have." Defendant then repeatedly attempted — without success — to interrupt counsel's cross-examination, to attract counsel's attention, and to take over the cross-examination himself. Plainly frustrated with counsel's failure to cooperate with his desires in this regard, and with the trial court's refusal to allow him to conduct the examination on his own, defendant moved to represent himself.

That defendant had often expressed a disinclination to pursue an insanity defense during earlier proceedings is obvious from the record, but equally obvious is the fact that counsel had long been inclined to proceed otherwise, and that issue had often been discussed. Defendant had proven his ability to make his views known, and there is no reason to assume that he was unable to raise the insanity-defense issue had he so desired. Thus, the real question before the trial court was whether a motion made mid-trial to proceed pro se on the basis of defendant's dissatisfaction with counsel's approach to the cross-examination of a State witness justified a decision to relieve assigned counsel and allow defendant to represent himself through the remainder of the trial. Viewed in light of the

factual circumstances and the relevant law, I believe that the court acted well within its discretion in denying such a motion.*

As the Court correctly observes, the relevant considerations before a trial court in addressing such a motion were cogently summarized by the California Supreme Court in *People v. Windham*, 560 P.2d 1187 (Cal. 1977). As the court there explained, when a defendant has elected to proceed to trial represented by counsel and trial has commenced, "it is thereafter within the sound discretion of the trial court to determine whether such a defendant may dismiss counsel and proceed *pro se*." *Id.* at 1189. Factors which the court should consider in considering such a request "are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." *Id.* at 1191-92.

---

* In a footnote, the Court asserts that this interpretation of the events surrounding defendant's motion is inconsistent with what actually occurred at trial. The Court makes four points in this regard.

First, the Court reiterates the point that the trial court was on notice, from the beginning of trial, of defendant's general opposition to the use of an insanity defense. This reinforces the Court's argument that the *unstated* basis of the motion was counsel's reliance on the insanity defense. It does not, however, alter the fact that the motion was, in actuality, grounded on a different disagreement with counsel, i.e., the conduct of counsel's cross-examination of the victim.

The Court's second and third points suggest that defendant's objection to counsel's cross-examination of the victim was, in reality, an objection to his use of the insanity defense; that, in fact, the dispute was not over "how" to cross-examine the witness, but "whether to cross-examine at all." 171 Vt. at 297 n.1, 762 A.2d at 1264 n.1. I do not believe the Court accurately characterizes what occurred. Counsel informed the court prior to the cross-examination that defendant had "demanded that I do certain things during cross-examination that are not consistent with the trial strategy that I have." This shows a disagreement over how to cross-examine, not over whether to cross-examine.

Finally, the Court cites a statement by counsel suggesting that the "strategy" to which counsel referred was his use of "this defense," i.e., the insanity defense. This was an off-hand remark by counsel prior to a court-ordered break to allow counsel to consult with defendant. After the break, counsel actually explained for the record the basis of defendant's concern. Counsel indicated that defendant believed "angels" were "controlling" both the witness and defense counsel, and that defendant further believed the angels "would not allow me to do what I have to do, and I can't represent him, and that he again wants to fire me. And it's the angels and the devils are conspiring together." Thus, the record discloses that defendant wished to conduct the cross-examination himself because he believed counsel was being controlled by "angels and devils" and was therefore ill equipped to represent him. Whatever these concerns may reveal about defendant's competence to represent himself, they certainly do not support the Court's claim that defendant's objection to counsel's cross-examination was, in reality, an objection to use of the insanity defense.

Here there was no issue concerning counsel's competence to represent defendant or, more particularly, to cross-examine the witness in question. Decisions concerning whether or how to impeach the witness involved trial tactics within counsel's exclusive decisional control. See *In re Trombly*, 160 Vt. 215, 218-19, 627 A.2d 855, 857 (1993) (apart from issues that directly relate to crime upon which jury may rest its verdict, such as what plea to enter, whether to waive jury, and whether to testify, trial tactics are ultimately defense counsel's call); 1 American Bar Ass'n Standards for Criminal Justice § 4-5.2(b) (2d ed. 1980) (decision on what witnesses to call, whether and how to cross-examine witnesses, and other tactical decisions are exclusive province of trial attorney). Although defendant objected to counsel's cross-examination strategy, this was an area exclusively within counsel's control, and there was nothing to suggest that counsel's cross-examination was inadequate or below the standard of a competent attorney.

The court could also consider defendant's prior "proclivity to substitute counsel." *Windham*, 560 P.2d at 1192. As the record summarized earlier demonstrates, defendant had made a regular practice of moving to substitute counsel, and then equivocating and changing his mind. The forensic psychiatrist's observation that defendant was manipulative and obstructionist was amply borne out. Thus, the court was justified in viewing the most recent motion with some skepticism.

Finally, the court had to consider the fact that the motion was brought after one change of attorneys had already occurred, years of pretrial proceedings had taken place, a jury had been selected and trial had commenced. In these circumstances, the potential for delay, disruption, or error resulting from the removal of competent counsel and the appointment of defendant strongly militated against a decision to allow defendant to represent himself. The court might even have faced the prospect of dismissing the jury had defendant sought and obtained a continuance. See *id.* (court may consider length and stage of proceeding, and disruption or delay that may result from granting motion).

Thus, all of the relevant factors supported the court's decision to deny the motion. Although the court did not, in this case, conduct an extensive sua sponte inquiry of defendant, such an inquiry is not necessary where the defendant, or counsel, provides the court with sufficient information for an informed decision. See *United States v.*

*Padilla,* 819 F.2d 952, 956 n.1 (10th Cir. 1987) (affirming denial of defendant's motion to substitute counsel where defendant fully stated reasons for request); *McKee v. Harris,* 649 F.2d 927, 932-34 (2d Cir. 1981) (court's failure to inquire into request to substitute counsel found to be harmless where defendant otherwise stated his reasons). The record reflects that defendant had no difficulty voicing his views and concerns in support of the motion for self-representation, and that these concerns provided an insufficient basis to grant the mid-trial motion. Accordingly, I would affirm the judgment. I am authorized to say that Judge Jenkins joins in this opinion.

