*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-143

MARCH TERM, 2012

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Bennington Unit, |
| v. | } | Criminal Division |
| | } | |
| Michael Williams | } | DOCKET NO. 266-3-09 Bncr |

Trial Judge: David A. Howard

In the above-entitled cause, the Clerk will enter:

Defendant appeals from his guilty plea to one count of lewd and lascivious conduct with a child. He argues that the court erred in finding him competent to stand trial. We affirm.

In March 2009, defendant, who was fifty-five years old, was charged with five counts of lewd and lascivious conduct with a child and five counts of aggravated sexual assault with a victim less than thirteen years old. The information alleged that defendant inserted his penis into the twelve-year-old victim's anus and her vagina; he inserted his fingers into her anus and vagina; he licked the victim's breast; he placed his hands on her breast; he rubbed his penis in the victim's vaginal area; he touched her vagina with his hand; he subjected the victim to repeated nonconsensual acts as part of his common scheme and plan; and he placed his hand between the legs of another victim (the first victim's eight-year-old sister) and rubbed her vaginal area.

At defendant's request, the trial court, Judge Suntag presiding, appointed Dr. Jonathan Weker, a board-certified forensic psychologist, to evaluate defendant's competency. See 13 V.S.A. §§ 4814-17. In December 2009, Dr. Weker submitted a forensic psychiatric examination report to the court, opining that defendant was mentally competent to stand trial. Dr. Weker concluded that defendant was able to consult with his attorney with a reasonable degree of rational understanding and he had a rational as well as factual understanding of the proceedings against him. Dr. Thomas Powell, a licensed psychiatrist hired by defendant, also submitted a competency evaluation to the court. Dr. Powell opined that defendant was not competent to stand trial, asserting in part that defendant's view of the justice system was significantly colored by paranoid and delusional thinking.

A first competency hearing was held in December 2009 and April 2010 before Judge Suntag. At the hearing, the court remarked on the divergent opinions of the two doctors and questioned what might explain their different interactions with defendant. The court asked Dr. Weker to supplement his report to describe defendant's medication regime since his incarceration and to review defendant's Department of Corrections (DOC) records to ascertain the range of defendant's clinical presentations as observed by DOC clinicians. The court also indicated that defendant's competency should be reviewed again closer to trial. Dr. Weker filed a supplemental report in June 2010 after reviewing the DOC medical record. He concluded in part that defendant's medical record did not support Dr. Powell's assertion that defendant

showed "[t]he presence of 'a number of delusional beliefs and perceptions' and of a 'highly tangential and circumloquacious' narrative 'with frequent irrelevant diversions.' " The court subsequently found defendant competent to stand trial as of June 2010.

As contemplated by the court, both doctors submitted updated reports in anticipation of the upcoming trial. Dr. Weker's report was dated August 11, 2010, and Dr. Powell's report was dated August 26, 2010. Dr. Weker interviewed defendant for seventy five minutes in late July 2010. He also looked to the materials utilized in his original report and addendum. Dr. Weker concluded that his reexamination supported a finding that defendant was mentally competent. He found defendant's thoughts coherently organized with logical connections between ideas, and he found no evidence of grossly disturbed thinking, preoccupation with internal mental processes, or perceptual distortions. Although defendant focused on his perception that he was being treated unjustly and his paranoid feelings about fellow inmates and certain individuals in the judicial system, Dr. Weker found that his beliefs did not rise to the level of a delusion. Dr. Powell, who interviewed defendant on August 20, 2010 and met with him again on the day of the competency hearing, reached the opposite conclusion. Dr. Powell stated that when defendant was discussing his case and the issues that he saw as relevant to its disposition, "he became increasingly tangential and offered a number of comments indicative of an irrational thought process with paranoid and delusional features." Following a December 2010 competency hearing held within days of the scheduled jury draw and before a different judge, Judge Howard, the court issued a written order finding defendant competent to stand trial.

As the trial court recognized, to be competent, "a defendant must have 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'rational as well as factual understanding of the proceedings against him.' " State v. Bean, 171 Vt. 290, 295 (2000) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)). Both doctors agreed that defendant had mental health issues and a history of treatment, but they disagreed about how much this affected defendant's ability to go through a trial. Dr. Powell noted what he found to be serious "delusional" thinking about the court process, which he believed rendered defendant incompetent even though defendant factually understood that he was criminally charged and understood the general process that such charges involved. Defendant believed, for example, that: he was persecuted by a female dominated system in Vermont; Vermont addressed his case more stringently than New York; the prosecutor was biased against his Christian faith and beliefs; and the parents of the child victim "set him up" for their personal purposes.

Judge Howard found that many of these beliefs or opinions, even if wrong and questionable from a neutral viewpoint, could not be said to be so irrational as to find defendant incompetent. Many of them, the court continued, would simply make defendant an even stronger advocate for his defense than otherwise. It would be more concerning, the court explained, if defendant thought that the prosecutors were on his side and advocating for him. Even if the basis for his belief about their bias was questionable, defendant was not being deceived that they played a role other than prosecuting him. The question of whether New York would be a more sympathetic forum was not provable one way or the other, and again, the court found that defendant's belief on this issue did not mean that he was incompetent. Additionally, the court reasoned that defendant's belief that the victim's parents were setting him up could not even be considered that irrational. The court noted that defendants in child sex abuse cases often argued that the complainant had an ulterior motive in reporting the abuse, or that the child had been influenced by an adult in making the accusation.

The court found that the evidence demonstrated that defendant had the required understanding of the trial process, its adversarial nature, the role of the various participants, the charges he faced, and possible penalties and outcomes. As indicated above, while defendant had opinions about the motives of some of the players and perceived bias against him by Vermont prosecution versus New York prosecution, that did not equal incompetence. Additionally, although defendant may have identified different strengths and weaknesses in his case than would other defendants, the court found that this was often true and it was not sufficient to demonstrate incompetence. The court also rejected the notion that simply because Dr. Powell had seen defendant more recently, that meant that Dr. Weker's analysis and conclusion were therefore not as convincing or could not be relied upon. In some areas, the court explained, the doctors did not have that much conflict, and it found both doctors reliable witnesses in many ways. Where the doctors did vary, the court found Dr. Weker's conclusions reasonable and supported by the evidence.

The court noted in its decision that Dr. Powell had more history for defendant and that Dr. Weker even had some history that was not correct due to defendant providing him with unreliable information. Dr. Weker also had not reviewed Dr. Powell's most recent report before the final competency hearing. The court found that Dr. Powell did a thorough evaluation and had grounds for his opinion, and the court acknowledged that this made its ultimate decision a closer call than it might have otherwise been. The court disagreed with Dr. Powell's conclusion relating his opinions to the competency issue in this case. The ultimate question was defendant's present mental condition and his ability to face trial, and the court found that defendant met the standard for competency. Defendant subsequently pled guilty to one count of lewd and lascivious conduct with a child pursuant to a plea agreement and received an agreed-upon sentence of twelve to fifteen years to serve. This appeal followed.

Defendant argues that the court committed clear error in finding Dr. Weker's conclusions reasonable and supported by the evidence. He asserts that the trial court should have credited Dr. Powell over Dr. Weker and that the court should have given greater weight to the fact that Dr. Powell evaluated defendant more recently than Dr. Weker. He contends that Dr. Weker's evaluation relied "almost entirely on unreliable statements" made by defendant. Defendant also argues that the court committed reversible error because it failed to determine if he could assist in his own defense and adequately consult with counsel.

We find these arguments without merit. As set forth above, a defendant is considered competent if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him." Bean, 171 Vt. at 295 (quoting Dusky, 362 U.S. at 402). "[I]t is the trial court's responsibility, in the first instance, to evaluate the evidence and to determine whether defendant's competency meets the constitutional standard. If the court's findings are supported by credible evidence and not clearly erroneous, they must be upheld." Id. (citation omitted). The court's decision is supported by the evidence here.

Dr. Weker opined with reasonable medical certainty that defendant was able to consult with his attorney with a reasonable degree of rational understanding. He found that defendant possessed the capacity to disclose information pertinent to the alleged offenses without any significant interference from irrational beliefs, and the capacity to consider information from other sources. He found that defendant did not evidence any major impairment of his capacity to appraise different defenses and plan legal strategy in conjunction with his attorney, and that he would be able to consult with his lawyer around such tactical matters as whether to testify, whether to pursue a plea agreement, or whether to appeal. Defendant was also able to make

some cogent suggestions regarding a possible defense.  He was able to discern how to communicate with his attorney during a trial in order to challenge witnesses in an appropriate and effective fashion.  He described a positive relationship with his attorney and was able to discern how to handle any significant disagreement that might arise between them. Dr. Weker found that defendant's ability to cooperate with the mental examination and meaningfully discuss his legal circumstances suggested an ability to do likewise with his attorney.

Dr. Weker also offered his opinion with reasonable medical certainty that defendant had a rational as well as factual understanding of the proceedings against him.  He could appreciate what he had been charged with, the magnitude of the alleged offenses and the venue of the trial. He understood the purpose of a trial and knew what plea options he had.  He demonstrated a realistic grasp of the roles of fundamental personages in his trial.  He understood concepts of court procedure.  He had a realistic concept of appropriate courtroom demeanor and could conform appropriately.  Defendant demonstrated a grasp of possible outcomes of his case and an appreciation of possible sentences.  He was capable of considering and entering into a plea agreement.  Dr. Weker's subjective impression was that defendant possessed "a capacity to testify relevantly" and possessed "no proclivity toward[] any pathological guilt or self-defeating behavior that would interfere with his pursuit of the best possible outcome on his own behalf."

As noted above, Dr. Weker noted that while defendant had some paranoid thoughts, they did not reach delusional proportions.  He found no references in the DOC medical record to any delusional beliefs that the U.S. government and its agencies targeted defendant for persecution, which Dr. Powell had reported occurred throughout his interviews.  Rather, the DOC medical record was quite consistent in depicting defendant's thought form as linear and logical.  In connection with his updated report, Dr. Weker again found defendant's speech spontaneous, fluent, goal directed and appropriately detailed.  He found defendant's thoughts coherently organized with logical connections between ideas.  There was no evidence of grossly disturbed thinking, preoccupation with internal mental processes, or perceptual distortions such as hallucinations.  Dr. Weker again concluded that, despite his display of some paranoid feelings, defendant's beliefs did not rise to the level of a delusion.  Dr. Weker made numerous other observations and conclusions that supported his opinion.

The trial court found Dr. Weker persuasive and adopted his conclusions where they differed with the conclusions reached by Dr. Powell.  It acted well within its discretion in doing so.  As set forth above, the trial court agreed with Dr. Weker that the behavior identified by Dr. Powell did not constitute delusional thinking.  The court was mindful that Dr. Powell had interviewed defendant more recently than Dr. Weker, but concluded this factor was not dispositive.  The court also recognized that some of the history Dr. Weker reported was incorrect because defendant had provided him unreliable information, but it found that this did not undermine Dr. Weker's conclusion as to defendant's competency.  While defendant disagrees with the result, he fails to demonstrate clear error.  The trial court considered the evidence before it and found Dr. Weker more persuasive than Dr. Powell.  It rejected the conclusions that Dr. Powell drew from his interactions with defendant.  It is the exclusive province of the trial court "to determine the credibility of the witnesses and weigh the persuasiveness of the evidence." Cabot v. Cabot, 166 Vt. 485, 497 (1997).  This Court does not reweigh the evidence on appeal. The court's decision is supported by the record, and defendant fails to show that the court erred in finding him competent.

Finally, we reject defendant's assertion that the court failed to make the necessary findings to support its decision.  The trial court recognized that a defendant must have sufficient present ability to consult with "one's lawyer with a reasonable degree of rational understanding"

4

to be competent, and that the defendant must have a rational and factual understanding of the proceedings against him; the trial court's findings support its conclusion that defendant met these standards. Its conclusions rested in part on testimony by Dr. Weker that defendant could disclose information pertinent to the alleged offenses without any significant interference from irrational beliefs; that defendant could consider information from other sources, appraise different defenses and plan legal strategy in conjunction with his attorney; and that he could consult with his lawyer around such tactical matters as whether to testify, whether to pursue a plea agreement, or whether to appeal.  We find no error.

Affirmed.


BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Beth Robinson, Associate Justice

5