2013 VT 66

## In re A.B. and A.B., Juveniles

[79 A.3d 42]

No. 12-322

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 2, 2013

*Michael Rose*, St. Albans, for Appellant.

*William H. Sorrell*, Attorney General, *Bridget C. Asay*, Assistant Attorney General, Montpelier, and *Jody Racht*, Assistant Attorney General, Waterbury, for Appellee.

¶ 1. **Skoglund, J.** Mother appeals from the trial court's order terminating her residual parental rights in A.B. and A.B. She argues that the court erred in denying her request to represent

herself, which she made on the first day of the termination hearing. We conclude that the court acted within its discretion and therefore affirm.

¶ 2. Mother does not dispute the court's findings and conclusions as to the merits of the termination order. We therefore briefly summarize the facts. A.B. and A.B. were born in June 2006 and January 2010, respectively. Parents struggled with mental health and domestic violence issues. There was also an ongoing issue with the children missing medical appointments and one child being removed from daycare. Father has numerous convictions for domestic assault against mother, and parents continued to see one another despite a no-contact order. Father also has a conviction for sexual assault involving a thirteen-year-old child, and he failed to complete sex-offender counseling. Mother has an assault conviction and faced drug charges at the time of the termination hearing.

¶ 3. The children were taken into the custody of the Department for Children and Families (DCF) in June 2011 pursuant to an emergency care order, shortly after parents failed to pick them up from a respite provider. They were adjudicated as children in need of care or supervision (CHINS) in July 2011. While the children were in custody, mother missed numerous visits with them. When mother did visit, she engaged in inappropriate and harmful conversation with the children. Mother gave birth to a methadone-addicted baby in February 2012 even though mother was not on a prescribed methadone treatment regimen. Mother was also evicted from her apartment. Mother did not complete a substance abuse assessment, and her doctor terminated her psychiatric medications because mother refused to do urine screens and pill counts. Mother was extremely volatile with DCF workers as well as with the children's foster mother.

¶ 4. In May 2012, DCF moved to terminate parents' residual rights, and a hearing was set for July 2012. On the first day of the termination hearing, mother informed her attorney that she was dissatisfied with her representation. Mother asked either for a new attorney or to be allowed to represent herself. Mother indicated that she had been dissatisfied with her attorney since she was appointed in June 2011. When the court asked mother why she was raising this issue at such a late date, mother replied that it was because she felt pressured into voluntarily relinquishing her parental rights in another child (the infant born in

February 2012), and she felt that her concerns were not being addressed.

¶ 5. Mother's attorney responded that she had been vigorously representing mother, and that she had been actively involved in the case from the beginning. The court concurred. It explained that if mother had been unsatisfied with her attorney from the outset, mother should have brought up this issue much earlier. Instead, mother raised it at the very last stage of the case — the hearing was about to commence, and witnesses were present and ready to testify. Accommodating such a request, the court continued, would require rescheduling the termination hearing to the detriment of the children, who had a very strong interest in having the case resolved. The court noted that mother's attorney worked very hard on her cases and was well prepared in those cases, and that there was no reason to expect anything different in this case. The court thus denied mother's request for a new attorney.

¶ 6. Mother then stated that she wanted to represent herself. In assessing mother's request, the court asked mother about her educational background, whether she had any legal training, or had ever represented herself. Mother indicated that she had a high school education, no legal training, and that she had never represented herself before in court. Mother stated that she had a vague awareness of the rules of evidence. Mother had never been employed. Following this exchange, the children's attorney expressed concern that mother could not adequately represent herself given her limited skills. The court agreed, denied mother's request, and proceeded with the hearing.

¶ 7. Following a two-day hearing, the court issued its order terminating parents' rights. It found that mother had not complied with the DCF case plan and that she could not provide the children with the safety and support that they needed within a reasonable period of time. Based on these and numerous other findings, the court concluded that termination of mother's rights was in the children's best interests. Mother appealed from this order.

¶ 8. Mother argues that the court denied her the right to represent herself at the termination hearing. Mother does not identify the source of this right or provide any legal authority to show that this right exists. Instead, mother appears to argue that the court was obligated to grant her request because she ex-

pressed her willingness to assume the risk of self-representation. Mother maintains that her capacity to adequately represent herself was irrelevant. Mother suggests that the court's denial of her request was particularly harmful because she might have no opportunity to raise an ineffective assistance of counsel claim given the current state of the law.[*]

¶ 9. We find no error. In reaching our conclusion, we need not decide if parents have a statutory or constitutional right to proceed pro se in juvenile proceedings. But see *In re Chapman*, 155 Vt. 163, 166, 581 A.2d 1041, 1043-44 (1990) (finding no federal constitutional right to appear pro se in civil post-conviction review proceedings because the right to self-representation derives from Sixth Amendment). Assuming arguendo that such a right exists, the court acted within its discretion in denying mother's untimely request.

¶ 10. Even in the criminal context, where the right to self-representation is constitutionally based, a request to proceed pro se "must be invoked in a timely fashion." *State v. Bean*, 171 Vt. 290, 297, 762 A.2d 1259, 1264 (2000) (observing that most courts have held that right to self-representation in criminal cases must be invoked before trial to be considered timely per se, and if invoked thereafter, trial court has discretion in deciding whether to allow self-representation). When such requests are not timely made, courts must consider, among other things, the potential for disruption and delay that would result from granting the request. *Id.* at 298, 762 A.2d at 1264-65.

¶ 11. This concern is even more compelling in the juvenile context because any right that a parent might have to proceed pro se must be weighed against a child's significant interest in the timely resolution of his or her case. See 33 V.S.A. § 5101(a)(4) (stating that one of the paramount concerns in the conduct of juvenile judicial proceedings is "timely permanency for children").

---

[*] Mother also argues that, to the extent that the court relied on its perceptions of counsel's performance in denying her request to proceed pro se, it erred in doing so because an ineffective-assistance-of-counsel claim cannot be measured by in-court performance alone. The premise of mother's argument fails because the comments were not made in ruling on mother's request to proceed pro se. We note, moreover, that if mother had concerns about her attorney's preparedness, she could have raised those concerns to the trial court in a timely manner, before the first day of the termination hearing.

Other courts have expressed a similar sentiment. See, e.g., *In re A.M.*, 79 Cal. Rptr. 3d 620, 628 (Ct. App. 2008) (recognizing that while parents have a statutory right to proceed pro se in juvenile cases, this right "must *always* be weighed against the child's right to a prompt resolution of the dependency proceeding"). Mindful of this concern, courts have discretion to deny a parent's request to proceed pro se where it is reasonably probable that granting the request would "lead to undue delay in the proceedings that would impair the child's right to a prompt resolution of custody." *Id.* at 628-29.

¶ 12. In this case, mother professed to have been unhappy with counsel since June 2011, but she did not raise any issue about counsel's performance until the first day of the termination hearing, more than a year later. At that point, the hearing was about to begin and witnesses were present and ready to testify. Under these circumstances, the court properly considered mother's ability to immediately assume responsibility for her own case. It acted within its discretion in concluding that mother was not prepared to represent herself and that any delay would impair the children's right to a prompt resolution of their custody status. We are not persuaded to a contrary conclusion by mother's speculative concern about her ability to raise an ineffective-assistance-of-counsel claim. We find no error in the court's decision.

*Affirmed.*