## In re L. R.

[497 A.2d 753]

No. 84-294

Present: **Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed May 31, 1985

18

*Jeffrey L. Martin,* Washington County Deputy State's Attorney, Barre, for Plaintiff-Appellee.

*Joan Bauer,* Vermont Legal Aid, Inc., Montpelier, for Defendant-Appellant.

**Allen, C.J.** This case is an appeal from an order of involuntary medication pursuant to 18 V.S.A. § 7618. The appellant contends that the State failed to prove, by clear and convincing evidence, that she is a "person in need of treatment," as defined at 18 V.S.A. § 7101(17), such proof being a prerequisite to an order of involuntary treatment. 18 V.S.A. §§ 7616(b), 7617(b).

The evidence adduced at the hearing in May of 1984 disclosed that L. R. had been a resident at the Vermont State Hospital in 1982, during which time she had attempted suicide by jumping from a third-story window. She was discharged from the hospital in August, 1982, and placed in a staffed apartment. In December, 1983, her psychiatrist placed her on medication. In January, 1984, she told a mental health worker that she had been "thinking about" suicide, although he characterized her comment as "not so much a suicide threat." Several weeks before the hearing, she informed her psychiatrist that she would not take the medication

anymore. Her behavior underwent a marked change, she became more hyperactive, and she at times demonstrated an inappropriate "affect," such as laughing for no reason.

A week before the hearing, L. R. telephoned the F.B.I. in Albany, confessed to two murders, and stated she would be waiting at the Montpelier post office to be arrested. At that time her psychiatrist spoke with her and concluded that she "was not homicidal or suicidal." The confessed murders did not "check . . . out at all." Her psychiatrist testified that L. R. had, in the past, made the observation that if she thought she was mentally ill she could not continue to live that way. He stated that when she does not take her medication "it's just a matter of time before she runs into problems and she gets very explosive, she starts back down and knowing her past history of the suicide attempt . . . I fear for her. . . . Usually, when she takes her medication, we can maintain her out in the community quite nicely." The psychiatrist concluded that, without the medication, L. R. would present a danger to herself.

The trial court found that the State had proven by clear and convincing evidence that L. R. presented a danger to herself, and ordered medication.

The appellant's first contention upon appeal is that the evidence did not indicate that she was presently a danger to herself, merely that she might, in the future, present such a danger. The appellant also contends that psychiatrists are unqualified to predict future dangerousness.

■ ■ Title 18 V.S.A. § 7101(17)(B)(ii) defines a "person in need of treatment" as, inter alia, one who has behaved in such a manner that it is probable that death, substantial physical bodily injury, serious mental deterioration or serious physical debilitation or disease "will ensue." Thus, the statute contemplates that predictions of future consequences shall be made in the course of determining whether someone is a danger to himself, and thus a person in need of treatment. The court below found that L. R. was presently a danger to herself because her mental state was such that serious physical injury would ensue. The fact that serious physical injury had not already occurred did not mean that L. R. was not yet a danger to herself. A present mental condition which, in "a matter of time," will result in serious physical injury or death is a present danger.

■ The psychiatrist's testimony that L. R. "might" harm herself, standing alone, would probably be insufficient to support a finding that L. R. presented a danger to herself. However, when asked whether L. R. would present a danger to herself if she failed to take the prescribed medication, the psychiatrist replied unequivocally, "[b]ased on the record, I'd have to say yes." Thus, the evidence supported the court's finding.

■ Nor do we accept the appellant's contention that psychiatrists are unqualified to make predictions of future consequences of present mental conditions. The use of psychiatric testimony to make predictions of future behavior, for purposes of civil commitments, was impliedly accepted in *Addington* v. *Texas*, 441 U.S. 418, 429-30 (1979). Even predictions of future dangerousness used at a death penalty hearing are admissible, despite having been based upon hypothetical questions rather than personal examination. *Barefoot* v. *Estelle*, 463 U.S. 880, 903 (1983). The psychiatrist's testimony was offered without objection as that of an expert in the area of mental health and the treatment of the mentally ill. He testified that he had been involved with the treatment of L. R. since 1982, and had examined her as recently as a week before the hearing. The psychiatrist's qualification to make such a prediction was sufficiently established.

The appellant next contends that, when a finding of dangerousness to oneself is predicated upon the danger of suicide, there must be evidence of recent suicide attempts, conduct, or threats. 18 V.S.A. § 7101(17)(B)(i).

A danger of harm to oneself may be demonstrated either by evidence of "threatened or attempted suicide or serious bodily harm," 18 V.S.A. § 7101(17)(B)(i); or evidence that the subject of the petition "has behaved in such a manner as to indicate that he is unable, without supervision and the assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, so that it is probable that death, substantial physical bodily injury, serious mental deterioration or serious physical debilitation or disease will ensue unless adequate treatment is afforded." 18 V.S.A. § 7101(17)(B)(ii).

The factual findings indicate that the "substantial physical bodily injury" anticipated by the court was L. R.'s suicide. As the court stated in its order denying a stay of the involuntary medication order, "[L. R.] is currently exhibiting delusional behavior

and although she is not yet suicidal . . . based on her medical history, such behavior is imminent if she remains off her drugs."

Thus, the court found that, under 18 V.S.A. § 7101(17)(B)(ii), the appellant was unable to satisfy her need for medical care (because she refused to take her medicine), thus creating the probability that physical bodily injury (a suicide or attempt) will ensue.

The appellant appears to suggest that when the danger to oneself is the danger of suicide, the requirements of 18 V.S.A. § 7101(17)(B)(i) must be met. That section requires "threatened or attempted suicide or serious bodily harm." Moreover, the appellant contends that constitutional standards of due process require that these overt acts must be recent.

As to the first contention, 18 V.S.A. § 7101(17)(B)(i) was not intended to be the exclusive means by which the State may prove that a person presents the risk of suicide. The "harm to himself" section of the statute does require a showing of some overt act. Under subsection (i), that overt act may be a threatened or attempted suicide. Under subsection (ii), some behavior indicating the inability to care for oneself is required. Thus, subsection (i) establishes that a threatened suicide may be enough, without more, to show a danger of harm to oneself. Rather than limiting the application of subsection (ii) to dangers other than suicide, subsection (i) permits a finding of danger to oneself without proof of the behavior described in subsection (ii).

While a few courts have required a showing of recent overt acts as a prerequisite to involuntary treatment, see, e.g., *Stamus* v. *Leonhardt*, 414 F. Supp. 439, 451 (S.D. Iowa 1976); *Doremus* v. *Farrell*, 407 F. Supp. 509, 515 (D. Neb. 1975), such a requirement has been rejected where the statute as a whole incorporates due process protections and meets minimum due process standards. *Project Release* v. *Prevost*, 722 F.2d 960, 973 (2d Cir. 1983). The Vermont statute requires evidence that the proposed patient presents a present danger of harm to himself or others, as evidenced by threats or behavior. This showing must satisfy the clear and convincing standard of proof, and must be made at a hearing at which the proposed patient is represented by counsel, and at which the rules of evidence apply. Where the State proves, clearly and convincingly, that the proposed patient's threats or acts demonstrate that he is a danger to himself, due process concerns are served. See, e.g., *Project Release, supra,* 722 F.2d at

972-73. Overt acts occurring shortly before the hearing may be given more weight than remote acts, but where the evidence is otherwise sufficient, recent acts are not a prerequisite to involuntary commitment.

■ Finally, the appellant contends that the findings showed only that she refused to take psychotropic medicine and that such a showing, by itself, is insufficient to prove that she presented a danger to herself. However, the court's findings also stated, "[L. R.] has paranoid schizophrenia. If she takes medication, remission follows. And, if she takes her medication regularly, she is not a threat to herself or others . . . [I]f she fails to take medication, she will be a danger to herself." Thus, the court found more than that L. R. refused to take medication, and specifically found that, because of her illness, the medication was necessary in order to prevent L. R. from harming herself.

*Affirmed.*