2008 VT 48

# In re E.T.

[959 A.2d 544]

No. 06-151

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed April 11, 2008

Motion for Reargument Denied May 13, 2008
Motion to Alter Denied June 27, 2008

*William H. Sorrell*, Attorney General, Montpelier, and *Mathew Viens*, Assistant Attorney General, Burlington, for Petitioner-Appellee.

*Brice C. Simon* of *Stevens Law Office*, Stowe, for Respondent-Appellant.

¶ 1. **Burgess, J.** E.T. appeals the trial court's determination that she is a "patient in need of further treatment," thus justifying her continued confinement in Vermont State Hospital pursuant to 18 V.S.A. § 7621(b). E.T. has been housed at the Hospital since 1992, after an incident in which she shot and killed her manager, wounded two co-workers, and attempted to burn down the Eveready Battery plant in Bennington. After that incident, E.T. was diagnosed with paranoid schizophrenia and found incompetent to stand trial for the charged crimes. She has since remained in the custody of the Vermont Department of Mental Health.

¶ 2. The State moved to extend E.T.'s commitment to the Hospital for an additional year, and a hearing was held on February 3, 2006. See 18 V.S.A. § 7621(b) (requiring the State to move to continue treatment on an annual basis, as court may only order continued hospitalization "for up to one year" following each hearing). At the hearing, E.T.'s treating psychiatrist, Dr. Munson, testified about her illness, stating that her condition was roughly the same as it was when she was admitted in 1992, and that he considered her a "risk" if she were to be released from the hospital environment. Based primarily on Dr. Munson's testimony, the court issued an order on March 8, 2006 granting the State's application, and ordering E.T.'s continued confinement at the Hospital.

¶ 3. E.T. appeals this determination, arguing that: (1) the State failed to prove she was a "[patient] in need of further treatment" as defined by § 7101(16); (2) the trial court erroneously admitted inadmissible hearsay evidence and excluded other material evidence; (3) she received ineffective assistance of counsel; (4) the court erred in preventing E.T.'s attorney from withdrawing so E.T. could represent herself; and (5) Vermont's involuntary-hospitalization procedures violate both the Vermont and United States Constitutions.

I.

¶ 4. E.T. first argues that the State failed to carry its burden of proving that she is a "[patient] in need of further treatment." In order to grant the State's motion to continue involuntary mental health treatment, the court must find, by clear and convincing evidence, that E.T. is a "patient in need of further treatment and requires hospitalization." 18 V.S.A. § 7621(b). A "patient in need of further treatment" is defined as a "person in need of treatment"

or a "patient who is receiving adequate treatment, and who, if such treatment is discontinued, presents a substantial probability that in the near future his or her condition will deteriorate and he or she will become a person in need of treatment." *Id.* § 7101(16). A "person in need of treatment" is defined as "a person who is suffering from mental illness and, as a result of that mental illness, his or her capacity to exercise self-control, judgment or discretion in the conduct of his or her affairs and social relations is so lessened that he or she poses a danger of harm to himself, to herself, or to others." 18 V.S.A. § 7101(17).[1]

¶ 5. E.T. claims that the State is required to present evidence of recent "overt acts" demonstrating that she presents a danger of harm to herself or others in order to extend her commitment. Sections 7621(b) and 7101(16) require no such showing. As we discussed in *In re P.S.*, the focus of a hearing to extend involuntary commitment is on whether the patient presents a risk of *future* harm if treatment is discontinued, not whether the patient poses a *present* danger. 167 Vt. 63, 71, 702 A.2d 98, 103 (1997) ("Although the statute requires the State to show a proposed patient is a 'person in need of treatment' at the time of application for original commitment, no subsequent decision requires a showing of dangerousness."). We explained that:

> The statutory structure assumes that treatment will reduce or eliminate the risk of harm from the patient's conduct. If the treatment is effective, a treated patient will not be dangerous. As a result, subsequent decisions about how and where a patient will receive treatment *involve predictions about the effect of discontinuing treatment, rather than dangerousness.*

*Id.* (citation omitted and emphasis added). Contrary to E.T.'s argument, therefore, the State need not make a showing that E.T. presently poses a danger of harm; rather, it must show that she presents a risk of future "dangerousness" if treatment were to be discontinued. *Id.*

¶ 6. On review, "we will uphold [the] trial court['s] findings as long as there is substantial evidence to support them although they are contradicted by credible evidence." *In re N.H.*, 168 Vt.

---

[1] E.T. was found to be a "person in need of treatment" by a trial court on September 22, 1992, when she was originally committed to the Hospital.

508, 512, 724 A.2d 467, 470 (1998) (quotation omitted). "The test on review is not whether this Court is persuaded that there was clear and convincing evidence, but whether the factfinder could reasonably have concluded that the required factual predicate was highly probable." *Id.* at 512-13, 724 A.2d at 470.

■ ■ ¶ 7. Here, the State presented sufficient evidence for the trial court to conclude that E.T. was a "patient in need of further treatment" pursuant to § 7621(b). Dr. Munson testified that E.T. continues to suffer from schizophrenia, and that her condition was roughly the same as it was when she was admitted to the Hospital in 1992.[2] Her symptoms include hallucinations, panic, and what Dr. Munson termed "infinite regress," evidenced by her practice of writing a series of letters that refer solely to the contents of other letters, none of which contain independent content. She has threatened patients on the ward and "is still driven by persecutory beliefs." Although E.T. steadfastly refuses to take the recommended antipsychotic drugs, Dr. Munson testified that she benefits from her confinement in the Hospital due to the availability of counseling, her participation in group activities, and the structure and security of the Hospital environment. Without confinement in the Hospital, he testified, it was "very likely" that her "panic would show itself . . . [and] without containment, I'm afraid she would act on it." He assessed the risk of her engaging in aggressive behavior as "high," the same as in previous years, and stated that leaving the confines of the Hospital could itself cause her to panic. This testimony provided sufficient support for the trial court's conclusions that E.T. would present a risk of future harm if she were discharged from the Hospital, and was therefore a "patient in need of further treatment" who required hospitalization under § 7621(b).

## II.

¶ 8. E.T. next argues that the trial court made two improper evidentiary rulings: first, by erroneously truncating E.T.'s cross-

---

[2] See *In re L.R.,* 146 Vt. 17, 19, 497 A.2d 753, 755 (1985) (this Court accepts as legitimate testimony from treating psychiatrists who make "predictions of future consequences"); see also 18 V.S.A. § 7622(a) ("A mental health professional testifying at hearings conducted under this part may, if appropriately qualified, give opinion testimony and . . . describe any information which he acquired in attending the patient.").

examination of Dr. Munson regarding his beliefs as to whether a special computer can read and control minds, thus precluding the introduction of relevant evidence; and second, by allowing Dr. Munson to base his testimony in part on out-of-court statements made by Hospital staff members.

¶ 9. E.T. has the right to cross-examine witnesses at hearings for her continued treatment. 18 V.S.A. §§ 7621(a), 7615(d). E.T. now contests the fact that the court did not allow her personally to ask questions about whether Dr. Munson believed a special computer could be built that could "read a person's mind and control a person's thoughts." E.T.'s lawyer refused to ask these questions at the hearing, and the court denied E.T's. request to cross-examine Dr. Munson herself. E.T. claims that this decision denied her the right to present evidence relevant to her defense.

¶ 10. "The extent of cross-examination is largely within the discretion of the trial judge . . . ." *State v. Young*, 139 Vt. 535, 539, 433 A.2d 254, 257 (1981); *State v. Morrill*, 127 Vt. 506, 513, 253 A.2d 142, 147 (1969). We overturn the trial court's management of cross-examination only for abuse of discretion. *Id.* Whether to cross-examine and the extent of questioning are tactical decisions within the purview of the attorney. See *In re Mecier*, 143 Vt. 23, 31-32, 460 A.2d 472, 477 (1983). In short, "the client must accept the consequences of the lawyer's decision to forgo cross-examination." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988).

¶ 11. Here, E.T. was given the opportunity to cross-examine Dr. Munson, during which time her attorney questioned him on his observation and treatment of E.T. over the past fourteen years. Counsel ended cross-examination without asking Dr. Munson about his conversations with E.T. regarding computer mind control. Despite being urged by E.T. to pursue this line of questioning, to decline to do so was a tactical decision within the professional discretion of E.T.'s attorney. The trial court did not err in refusing to allow E.T. to cross-examine Dr. Munson herself after her attorney had completed what was, in the attorney's judgment, appropriate cross-examination of the witness. When E.T. chose to be represented by counsel, she chose to abide by tactical decisions made by that attorney; she does not have a right to reject that choice midtrial and represent herself. See *infra*, ¶ 16.

■ ■ ¶ 12. Even if the trial court did err in refusing to allow E.T. to solicit this line of questioning, this error was harmless. To reverse based on an erroneous evidentiary ruling, E.T. must "demonstrate that the error resulted in prejudice." *In re R.M.*, 150 Vt. 59, 65, 549 A.2d 1050, 1054 (1988); V.R.C.P. 61 ("No error in . . . the exclusion of evidence . . . is ground for . . . disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."). E.T. has failed to show prejudice from the exclusion of this evidence. The relevant legal issue at the hearing was whether E.T. was a "patient in need of further treatment." Even if Dr. Munson had had a conversation with E.T. about how computers could control minds, this conversation would have had no bearing on his testimony that she continues to suffer from paranoid schizophrenia and would present a high risk if she were to be released from the Hospital. The trial court's decision to exclude this line of questioning was therefore harmless error.

■ ¶ 13. E.T. also challenges the trial court's ruling to allow Dr. Munson to testify about statements made to him by staff members regarding E.T.'s behavior and condition. E.T. claims that these out-of-court statements are inadmissible hearsay. While out-of-court statements are generally not admissible for their truth, see V.R.E. 802, such statements may be admissible to form the basis of a testifying expert's opinion. "Under [V.R.E.] 703, if an expert relies on the out-of-court statements of another in forming his or her opinion *and* if such statements are of a type reasonably relied on by experts in the particular field, then the statements — even if not independently admissible for their substance — will be admissible for the limited purpose of demonstrating the basis for the expert's opinion." *State v. Recor*, 150 Vt. 40, 48, 549 A.2d 1382, 1388 (1988). In *Recor*, we upheld the trial court's decision to allow a forensic psychologist to testify about past statements made to her during counseling sessions by a victim of sexual abuse. *Id.* at 46, 549 A.2d at 1387. Because the victim's statements regarding specific events in her past formed the basis of the psychologist's opinion that she had, in fact, been sexually abused, these otherwise inadmissible statements were admitted to explain the psychologist's opinion. *Id.* at 49, 549 A.2d at 1388; see also *Everett v. Town of Bristol*, 164 Vt. 638, 639-40, 674 A.2d 1275, 1277 (1996) (mem.).

¶ 14. Dr. Munson's testimony about the statements made to him by Hospital staff was properly admitted here as the basis for his opinion that E.T. continues to suffer from schizophrenia and its effects. On direct examination, he testified about reports he had received from staff regarding E.T.'s delusional behavior, threats she had made to other patients in her ward, and violent interactions she had had with staff and other patients. Dr. Munson relied on these reports to form his conclusion that E.T. continued to suffer from paranoid schizophrenia and would present a "high" risk of harm if she were released from the Hospital. He stated that such reports are "something that a person in [his] circumstance as a psychiatrist would typically rely on," and that it was "appropriate for [him] to rely on that information in forming [his] opinion about what [E.T.'s] behaviors were as a result of her mental illness." Because this information informed his opinion as to E.T.'s mental state, it was properly admitted as the basis for his expert opinion testimony.

## III.

¶ 15. E.T. next claims that the trial court erred when it denied her attorney's motion to withdraw, thus preventing E.T. from proceeding pro se. E.T. sought to fire her attorney after counsel refused to cross-examine Dr. Munson on whether a special computer could "read a person's mind and control a person's thoughts."

¶ 16. E.T. had the right to appear pro se at her commitment hearing, but "most courts have held that the right to self-representation must be invoked before trial to be considered timely per se." *State v. Bean*, 171 Vt. 290, 297, 762 A.2d 1259, 1264 (2000). If a defendant seeks to proceed pro se midtrial, however, "the trial court has discretion on whether to allow self-representation." *Id.* at 297, 762 A.2d at 1264. In order to determine whether a defendant may dismiss counsel and proceed pro se, the trial court must consider a number of factors, including, but not limited to:

"the quality of counsel's representation of the defendant, the defendant's proclivity to substitute counsel, the reasons for the request [for withdrawal], the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion."

*Id.* at 297-98, 762 A.2d at 1264 (quoting *People v. Windham*, 560 P.2d 1187, 1191-92 (Cal. 1977)). Key among these factors are the "quality of trial counsel's representation and the reason for the request [to withdraw]." *Id.* at 303, 762 A.2d at 1268. The trial court has broad discretion to evaluate these factors, *id.*, and we will not reverse unless the trial court has abused its discretion, either by "fail[ing] to exercise discretion, or its exercise on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Richardson v. Persons*, 116 Vt. 413, 416, 77 A.2d 842, 844 (1951).

¶ 17. The trial court did not abuse its discretion in refusing to allow E.T. to proceed pro se. After hearing E.T.'s motion, the court inquired as to the reasons for her counsel's withdrawal. E.T. explained that, although she was generally pleased with her attorney, she disagreed with counsel's refusal to cross-examine Dr. Munson about "mind control computer system technology," and thus wanted to proceed pro se in order to pursue this line of questioning herself. This motion was made in the middle of the hearing, after Dr. Munson had finished testifying and E.T.'s attorney had completed cross-examination. Allowing E.T. to represent herself at this point would have been of no value to her defense, given that the line of questioning E.T. sought to pursue was irrelevant to the legal matter at issue in the hearing.[3] See *supra*, ¶ 12. Because E.T. appeared to be otherwise satisfied with her attorney's performance and only sought to personally inquire of Dr. Munson about immaterial information, we cannot say that the trial court abused its discretion in denying E.T.'s motion.

IV.

¶ 18. E.T. raises two additional arguments: (1) that Vermont's involuntary-hospitalization procedures violate the Vermont and United States Constitutions; and (2) that she received ineffective assistance of counsel. Because the constitutional claims

---

[3] E.T. claims she had a conversation with Dr. Munson where he agreed that it was possible for an animal, such as a dog, to control a computer if electrodes were connected between the computer and the animal's mind. Assuming this conversation occurred as E.T. describes, Dr. Munson's agreement that such an experiment is scientifically possible has no bearing on his testimony that E.T.'s belief that "Jeffrey and Pamela Mooney" operate a "mind control computer system [that] . . . is being used throughout the country and the world" is delusional, and thus symptomatic of her schizophrenia.

were not raised below, we need not consider them on appeal. See *Cleveland v. Dep't of Employment Sec.*, 138 Vt. 208, 211, 414 A.2d 1157, 1159 (1980); *In re Denio*, 158 Vt. 230, 234, 608 A.2d 1166, 1168 (1992) ("[I]ssues not raised below, even those having a constitutional dimension, need not be considered when presented for the first time on appeal.") (quotation omitted). We will also not consider E.T.'s ineffective assistance of counsel claim because we generally do not address such claims on direct appeal. See *State v. Davignon*, 152 Vt. 209, 221-22, 565 A.2d 1301, 1308 (1989) (explaining that we do not consider ineffective assistance of counsel claims on direct appeal because there is no factual record for the Court to evaluate the claim); *State v. Gabaree*, 149 Vt. 229, 232-33, 542 A.2d 272, 274 (1988).

*Affirmed.*