*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2010-478

APRIL TERM, 2011

| | |
|---|---|
| In re B.M. | } APPEALED FROM: |
| | } |
| | } Superior Court, Washington Unit, |
| | } Family Division |
| | } |
| | } DOCKET NOS. 291/292/293/300- |
| | 11-10 Wnmh |

Trial Judge: Stephen B. Martin

In the above-entitled cause, the Clerk will enter:

B.M. appeals a family division order granting the State's application for involuntary medication and continued treatment, and committing B.M. on an order of hospitalization. On appeal, B.M. argues that the court (1) erred in committing him without a finding that B.M. was a risk of danger to himself and the community, (2) erred in finding B.M. incompetent to choose not to be medicated, and (3) failed to consider reasonable alternative placements to hospitalization. We affirm.

B.M. is a twenty-four-year-old man who suffers from paranoid schizophrenia. He was admitted to the Vermont State Hospital (VSH) on November 12, 2010 after being identified as a person in need of treatment pursuant to 18 V.S.A. § 7508(d). At the time, he was under the care of the Commissioner of Mental Health pursuant to an order of non-hospitalization, which allowed him to live in the community under the supervision of a team leader. The order included several conditions including that B.M. was to take all medication as prescribed, to follow his treatment plan, to not possess weapons and to not have contact with a certain individual. Several months prior to his admission, the State filed a notice of noncompliance with the order, alleging that B.M. missed key appointments, refused medication, engaged in behavior that posed a threat to others, used marijuana, and had contact with a prohibited individual.

After B.M. was admitted, the State filed an application for involuntary treatment. The State also filed an application for continued treatment. In addition, because B.M. was refusing to accept prescribed medications at the VSH, the State filed a petition for involuntary medication. The court consolidated all of the matters into one hearing. At the hearing, the court heard testimony from B.M.'s treating psychiatrist, his team leader, his social worker, and B.M.

Based on the evidence, the court found the following facts. B.M.'s schizophrenia is manifested by disorganized speech, hallucinations, and unusual behavior. He believes he can read other people's minds through his eyes. He is paranoid and sometimes insists on carrying a bat and knife for protection. Prior to his involuntary hospitalization, he entered the emergency

room apparently suffering from sinus pressure and requested that holes be drilled into his head to release fluid. The court found that B.M. had failed to comply with his order of non-hospitalization as alleged. In particular, the court found that B.M.'s "behavior . . . posed a threat to others by walking in traffic and carrying swords, a machete and a baseball bat." Since admission, he has refused treatment at the VSH, choosing not to attend groups and not accepting medication offered to him. He has been assaultive to VSH staff and two days prior to the hearing struck a staff member in the face, leaving a bloody swollen mark.

In terms of medications, the court found that B.M. has received Haldol on an emergency basis on several occasions since admission and has responded well with minor side effects. In addition, B.M. has taken Geodon in the past and had a positive response with no side effects. The court found that B.M. "has no insight into his condition and does not believe that he has a mental illness. His suggestion that his symptoms be treated with marijuana is not based on reality." Therefore, the court found B.M. was not competent to make a decision concerning his medication. Given B.M.'s failure to participate in groups or other therapies, the court found there were no alternative treatments. The court concluded that medication would allow B.M. to converse and engage in his treatment planning as well as alleviate the severity of his symptoms and progress towards discharge. Thus, the court concluded the benefits of treatment outweighed the risks. The court granted the application for continued treatment and committed B.M. to the custody of the Commissioner under an order of hospitalization. The court also granted the petition for involuntary medication. B.M. appeals.

On appeal, B.M. argues that the court erred in (1) committing him absent evidence that B.M. was a risk of danger to himself and the community; (2) disregarding B.M.'s testimony regarding his desire to not be medicated; and (3) failing to consider alternative placements.

B.M. first argues that there were insufficient grounds to grant the application for continued treatment and order hospitalization because there was no evidence that during his period of non-hospitalization he "acted out against anyone or threatened anyone." According to B.M., before he could be committed to the care of the Commissioner, the State was required to show that he is a danger to himself or the public. In support, he cites 18 V.S.A. § 7101(17), the definition for a person in need of treatment.

Already determined to be dangerous and in need of treatment, the law does not require the State to demonstrate anew that B.M. presented a danger. We have explained that while the initial designation of a person as one in need of treatment requires a showing of dangerousness, "subsequent decisions about how and where a patient will receive treatment involve predictions about the effect of discontinuing treatment, rather than dangerousness." In re P.S., 167 Vt. 63, 71 (1997). An order of non-hospitalization may be revoked if the State proves that "the patient violated the order of non-hospitalization and that hospitalization is appropriate." Id. at 70; see 18 V.S.A. § 7621. To revoke an order of non-hospitalization the State is not required to show present dangerousness, but "it is sufficient that it prove that the patient is a 'patient in need of further treatment' as defined in 18 V.S.A. § 7101(16)." In re P.S., 167 Vt. at 72. Although superfluous in this regard, we note that the court did find B.M. presented an ongoing danger by virtue of his possession of weapons and his behaviors in conjunction with his diagnosed paranoia.

2

Here, B.M. had already been declared a person in need of treatment and was under an order of non-hospitalization, which contained conditions for his proper treatment. B.M. concedes that he violated the terms of the order. It was therefore up to the court to determine whether he was in need for further treatment and if hospitalization was appropriate.

The evidence supports the court's finding that B.M. continues to be a person in need of further treatment and that hospitalization was proper. "A patient in need of further treatment" is defined as a "patient who is receiving adequate treatment, and who, if such treatment is discontinued, presents a substantial probability that in the near future his condition will deteriorate and he will become a person in need of treatment." Id. § 7101(16)(B). The court found that after B.M. stopped complying with his treatment plan, his condition deteriorated—he engaged in behavior that posed a threat to himself and others as displayed by his action of carrying weapons and his request that holes to be drilled into his head. Contrary to B.M.'s assertion, the State was not required to show that B.M. "ever used any of those potential weapons as weapons or as a threat." Because the standard is whether there is a risk of future harm, the State does not have to wait until a person "actually becomes dangerous to intervene." In re P.S., 167 Vt. at 74; see In re E.T., 2008 VT 48, ¶ 5, 184 Vt. 273 (reiterating that extension of commitment does not depend on evidence of recent overt acts). The State properly met its burden in this regard.

Next, B.M. argues that the court improperly disregarded his testimony regarding his reasons for not taking medication and erred in finding that he was incompetent to refuse medication. Before issuing an order for involuntary medication, the court must determine "whether the person is able to make a decision and appreciate the consequences of that decision." 18 V.S.A. § 7625(c). The State has the burden of demonstrating a patient's incompetence by clear and convincing evidence. Id. § 7625(b). We uphold the court's findings "as long as there is substantial evidence to support them although they are contradicted by credible evidence." In re E.T., 2008 VT 48, ¶ 6 (quotation omitted).

The court found that B.M.'s "paranoia has prevented any meaningful discussion of the risks and benefits of treatment" and therefore he is not competent to make a decision about his medication. These findings are supported by the testimony of B.M.'s psychiatrist, who explained that B.M. does not have the capacity to make a decision regarding medication. B.M. believes he does not have an illness and believes that all medications are in his head. Further, B.M. has disrupted speech so that it is difficult to have a conversation with him and follow his train of thought. Therefore, there was no error in the court's finding of B.M.'s incompetence.

B.M.'s testimony does not undermine the court's finding. Regarding medication, B.M. testified simply that he felt he did not need medication and that it slowed him down. The court was within its discretion to rely on the psychiatrist's testimony. Further, B.M.'s assertion that his six months without medication proves he does not need it is without merit and, instead, tends to corroborate his incompetence and lack of insight. As the court found, during this untreated period, B.M.'s condition deteriorated and he exhibited behavior that was potentially harmful to himself and others.

B.M.'s final argument is that the court did not consider alternative placements. Before ordering hospitalization, the court should consider the existence of alternatives. 18 V.S.A.

3

§ 7617(c).  The court considered and reasonably rejected any alternative.  The court explained that given B.M.'s refusal to participate in any type of group therapy and B.M.'s ongoing need for medication, no alternative treatment options were available.  This finding is supported by B.M.'s psychiatrist's testimony that there was no less restrictive facility that could treat B.M. given his need for medication and his assaultive behavior.  Therefore, the court properly considered alternatives and rejected them based on credible evidence.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice