*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-243

OCTOBER TERM, 2015

| In re J.L., Juvenile | } | APPEALED FROM: |
|---|---|---|
| | } | |
| | } | Superior Court, Rutland Unit, |
| | } | Family Division |
| | } | |
| | } | DOCKET NO. 11-2-14 Rdjv |

Trial Judge: Nancy Corsones

In the above-entitled cause, the Clerk will enter:

Mother appeals an order of the family division of the superior court terminating her parental rights with respect to her son, J.L. She argues that the court failed to engage her in a personal colloquy to assure that her decision not to testify under direct examination was knowing and intelligent. We affirm.

The family court's undisputed findings reveal the following facts. Mother has a lengthy history of severe drug addiction that began in her teen years. She became fully addicted to heroin about eighteen months before the termination hearing, which was held in May 2015. In late 2013, when she discovered that she was pregnant with J.L., she went to the Brattleboro Retreat, where she was prescribed Subutex. She left the Retreat after a few days and began injecting heroin again. She did so throughout her pregnancy, and J.L. was born on January 26, 2014, addicted to heroin. Shortly after his birth, he was placed into the custody of the Department for Children and Families (DCF). On February 13, 2014, the parties stipulated to J.L. being a child in need of care or supervision (CHINS). The parties also stipulated to a disposition order that continued DCF custody and set forth a case plan with concurrent goals of reunification and adoption. The case plan emphasized parent-child contact and addressing mother's substance abuse.

Mother continued to use heroin after J.L. was taken into DCF custody. At one point, she entered a treatment clinic but was discharged for failure to attend treatment sessions consistently. She later went back into the clinic and remained there for about four months before being discharged in the fall of 2014 after testing positive for opiates and cocaine. At the time of the termination hearing, mother was still using heroin. In May 2014, mother was charged with domestic assault based on an incident in which she strangled her mother, with whom she was living. Mother's visits with J.L. after he was placed in foster care were inconsistent. Between J.L.'s birth in January 2014 through the termination hearing in May 2015, mother visited J.L. for a total of about 170 hours, all of which were supervised.

Following the hearing, the family court terminated mother's parental rights, concluding that her ability to parent J.L. had stagnated and that the child's best interests compelled termination. In the court's view, mother was unable to play a constructive role in J.L.'s life, and there was no possibility that she would be able to assume parenting duties within a reasonable period of time from the child's perspective.

On appeal, mother argues that at the close of the State's case at the termination hearing, the family court committed reversible error by not engaging her in a colloquy to ensure that she was knowingly and voluntarily foregoing her opportunity to present her case. At the termination hearing, mother was called as a State's witness. Following her direct testimony, her attorney cross-examined her, eliciting testimony about why she missed visits with J.L. through no fault of her own and how her DCF caseworker had not returned telephone calls regarding her attempt to start up visits again. Her attorney also elicited testimony about mother's impending move to a home in Middlebury. At the conclusion of the cross-examination, the attorney stated that there might be other questions on direct. After the State rested, the court asked whether mother was going to present any evidence. Mother's attorney indicated that he had had a "short discussion" with mother and then stated: "I think what she said this morning on cross is her testimony and I think I'll leave it like that."

Other than noting the gravity of a termination hearing, mother cites no legal basis for compelling the family court to engage her in a personal colloquy concerning the scope of her testimony. Mother states only that at the close of the State's case, "the evidence decidedly supported termination of [her] parental rights," and thus the court should have ensured that she understood she was effectively "conceding the case" by "waiving her sole opportunity to communicate fully why such a result would be unjust."

We find no error. The record indicates that mother's attorney took an active role at the hearing, cross-examining every State's witness and eliciting positive testimony from mother on cross- examination after she was called as a witness by the State. Given the evidence about mother's continuing drug use, lack of stable housing, and lack of contact with J.L., the tactical decision not to have mother testify on her own behalf was not necessarily unreasonable. Absent any indication that the attorney was failing to represent mother adequately, the family court had no obligation to question mother about her attorney's decision not to call any witnesses or have her testify. Cf. In re E.T., 2008 VT 48, ¶ 10, 184 Vt. 273 ("Whether to cross-examine and the extent of questioning are tactical decisions within the purview of the attorney.").

Even assuming, which we do not, that the court was remiss in not engaging mother in a colloquy about her not testifying further, mother does not assert, and the record does not show, that the omission resulted in any prejudice. Mother makes no proffer as to what evidence was omitted or what her testimony would have been. Indeed, there was overwhelming evidence that mother had made no progress toward reunification and would not be able to assume parenting duties within a reasonable period of time. Cf. In re K.F., 2013 VT 39, ¶¶ 27-28, 194 Vt. 64 (concluding that ineffective-assistance claim could not be established

where parent could not demonstrate that alleged errors would have altered critical findings supporting termination of parental rights).

Affirmed.

BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
Beth Robinson, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice