*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-006

DECEMBER TERM, 2016

| | |
|---|---|
| In re T.H. | }     APPEALED FROM: |

}

}     Superior Court, Chittenden Unit,

}     Family Division

}

}     DOCKET NO. 93-6-15 Cnmh

Trial Judge: Martin A. Maley

In the above-entitled cause, the Clerk will enter:

Respondent T.H. appeals an order granting an application for involuntary treatment. On appeal, T.H. argues that evidence does not support the court's finding that he was a person in need of treatment at the time the petition was filed and that the court was required and failed to find that he was a person in need of treatment at the time of trial. We affirm.

In June 2015, the State filed an application for involuntary treatment of T.H. At the time, T.H. was an inmate at the Southern State Correctional Facility (SSCF). He was serving a lengthy term of imprisonment that would end in January 2016. The application was supported by a certificate by Dr. Mitchell, a licensed physician, and a statement from Mr. Krulish, a mental health coordinator at the SSCF, who was providing treatment to T.H.

The court held a hearing on the petition in November 2015. The court found the following facts. T.H. has been diagnosed with schizophrenia. Because of his mental illness, T.H. is delusional, paranoid, and has disorganized thinking. He has a long history of paranoid delusions with aggressive behaviors. T.H. has little insight into his illness and refuses to take his antipsychotic medication. At the SSCF, T.H. was in the mental health stabilization unit and when he became destabilized, was transferred to the mental-health treatment unit, where he resided at the time of the final hearing in an individual cell because it would not have been safe to have another inmate in the same cell. T.H. assaulted someone in 2009.[1] He has paranoid delusions and engages in behavior such as holding imaginary trials in his cell, pretending to be in physical fights with others, pointing an imaginary gun at correctional officers, and accusing others of violent acts such as raping and killing his children.

At the hearing, the court heard testimony from Dr. Mitchell, Mr. Krulish, and T.H. Based on the testimony, the court found that T.H. would present a risk of harm to himself and others if released into the community. The court found that without a highly structured environment, T.H. would be unable to provide for his daily needs, including access to food, medical services, housing, and personal safety. The court concluded that T.H. was a person in need of treatment as defined

---

[1] The trial court's findings state that T.H. assaulted a correctional officer. The record concerning this assault is sparse and does not indicate that a correctional officer was involved. The error has no bearing on the court's overall conclusions.

in 18 V.S.A. § 7101(17) and a person "in need of further treatment," id. § 7101(16), and that there was no less restrictive treatment available. Thus, the court granted the petition for involuntary treatment. T.H. appeals.

To subject T.H. to involuntary treatment, the State must prove that T.H. is "a person in need of treatment or a patient in need of further treatment." 18 V.S.A. § 7611. The State has the burden of proving this "by clear and convincing evidence." Id. § 7616(b). A person in need of treatment is defined as "a person who has a mental illness and, as a result of that mental illness, his or her capacity to exercise self-control, judgment, or discretion in the conduct of his or her affairs and social relations is so lessened that he or she poses a danger of harm to himself, to herself, or to others." 18 V.S.A. § 7101(17). Among other things, a danger to others may be shown with evidence that the person has inflicted or attempted to inflict bodily harm on another or has placed others in reasonable fear of harm. 18 V.S.A. § 7101(17)(A). A danger to self can be demonstrated with evidence of suicide attempts or threats or behavior that shows without treatment the person is "unable, without supervision and the assistance of others, to satisfy his or her need for nourishment, personal or medical care, shelter, or self-protection and safety, so that it is probable that death, substantial physical bodily injury, serious mental deterioration, or serious physical debilitation or disease will ensue." Id. § 7101(17)(B)(ii). In sum, to demonstrate that T.H. was a person in need of treatment, the State was required to prove that T.H. had a mental illness and that he posed a danger to himself or others and this could be shown with evidence of threats or behavior. See In re L.R., 146 Vt. 17, 21, 497 A.2d 753, 756 (1985) (explaining that risk of harm to self or others can be shown by threats or acts).

On appeal, T.H. argues that the court erred in finding that there was clear and convincing evidence that T.H. represented a danger to others. He emphasizes that the evidence showed that he had not assaulted anyone in several years and that the evidence of his assaultive behavior in 2009 was vague. He further argues that the court's finding that he was likely to become engaged in conflicts with others if released was not supported by the testimony of the SSCF medical director and a note written by a nurse responsible for his care, which both stated that T.H. did not pose a current risk of harm to others.

We conclude that there was no error. The court's finding that T.H. was a person in need of treatment was supported by the evidence concerning the risk of self-harm. The evidence supports the court's finding that T.H. presented a risk of harm to himself because his capacity to exercise self-control, his judgment, and his discretion was so diminished by his mental illness that he was unable to satisfy his needs for nourishment, personal or medical care, shelter, or self-protection. T.H. had not engaged in any release planning. Mr. Krulish testified that without someone else's assistance, T.H. would not be able to function well enough to go to the grocery store and purchase food, to obtain shelter, or to maintain his own self-protection and safety. Because the record supports the court's finding that T.H. would be at risk of harm to himself, we do not reach the question of whether the evidence supports the court's finding that T.H. presents a danger to others.

T.H. next argues that the statute requires the State to prove that the proposed patient is in need of treatment both at the time of the application and at the time of trial. T.H. relies on 18 V.S.A. § 7617(a), which states that the court must dismiss an application for involuntary treatment if the proposed patient is not a person in need of treatment "at the time of admission or application or is not a patient in need of further treatment at the time of the hearing." Assuming that T.H.'s interpretation of the statute is correct, we conclude that there was no error. A person in need of further treatment is defined as a person in need of treatment or a "patient who is receiving adequate

2

treatment, and who, if such treatment is discontinued, presents a substantial probability that in the near future his or her condition will deteriorate and he or she will become a person in need of treatment." Id. § 7101(16)(B). T.H. asserts that the court erred in concluding that he was a person in need of further treatment because he claims that the court analyzed his situation under the second possible definition and concluded that he was receiving adequate treatment and would deteriorate if it was discontinued. T.H. argues that this provision does not apply to his situation and is applicable only in cases where the patient has begun accepting treatment at the time the petition is filed and does not pose a present danger at the time of trial.

We conclude that there was no error. It should be recognized that T.H.'s situation is unique because although he had not previously been identified as a person in need of treatment, he was in state custody and was receiving care at the SSCF. Therefore, he was receiving some treatment at the time of the application and at the time of the hearing. It was within that context that the court found that T.H. was a person in need of further treatment because "[w]ithout continued adequate treatment in a hospital setting he will pose an imminent risk of harm to himself and others as noted above." For a couple of reasons, we do not read this statement as a finding by the court that T.H. was receiving adequate treatment at the time of trial as the term is used in § 7101(16). The reference to the "hospital setting" indicates that the court was referring not to the treatment T.H. was currently getting in the SSCF, but to the State's request to treat T.H. with hospitalization and medication. In addition, the court's reference to the risk of harm posed by T.H. "as noted above" indicates that the court was referring to its findings that T.H. was a person in need of treatment. Therefore, we conclude that the court's decision reflects that the court relied on the first definition of a person in need of further treatment, concluding that T.H. was a person in need of treatment at the time of trial and do not address T.H.'s argument regarding whether he was receiving adequate treatment.

The evidence supports this finding. Mr. Krulish testified that T.H.'s mental health needs at the time of the hearing continued to be the same as when the application was filed. He testified that T.H. was currently at risk of self-harm if released because he would be unable to provide for his own needs. Further, T.H.'s own testimony at the hearing supported the court's finding that without assistance T.H. cannot provide for his basic needs. In his testimony when discussing his plan after release, T.H. stated that he was an "active ranger" and that he owned "thirteen zoos."

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

3